IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JEANETTA PLEASANT,<br>Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CASE NO: 2:25-cv-01658-ACA |
| LAURA SUSAN BURNS, | ) |
| | ) JURY TRIAL DEMANDED |
| and | ) |
| | ) |
| AUTUMN A. CAUDELL, individually,<br>General Counsel of the Alabama State Bar,<br>in her official and individual capacities,<br>Defendants. | )<br>)<br>)<br>) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

COMES NOW the Plaintiff, **Jeanetta Pleasant**, and respectfully submits this Opposition

to the Defendants' Motion to Dismiss and Memorandum Brief in Support thereof. For the

reasons set forth below, the Motion to Dismiss is due to be denied in its entirety.

**I. INTRODUCTION**

This action arises from Defendants' misuse of disciplinary authority to retaliate against

Plaintiff for engaging in constitutionally protected speech about judicial accountability and

fairness within Alabama's courts. In correspondence dated August 25, 2025, Defendant Autumn

Caudell, acting as Assistant General Counsel for the Alabama State Bar, notified Plaintiff that

the Bar's Disciplinary Commission determined she "should receive a Public Reprimand with

General Publication and pay any and all costs taxed against her pursuant to Rule 33, Alabama

Rules of Disciplinary Procedure." *(Exhibit A).* The letter also ordered Plaintiff to remove

her social media petition criticizing a sitting circuit judge—a form of speech that constitutes

"core political expression" under settled First Amendment law.

The disciplinary determination, the compelled removal order, and the stigmatizing threat of public reprimand together create a direct and continuing constitutional injury. Defendants' conduct has caused Plaintiff substantial emotional distress and anxiety, chilled her willingness to participate in public discourse and harmed her professional reputation. Defendants now attempt to escape accountability by invoking immunity doctrines. Yet no form of immunity—qualified, quasi-judicial, or sovereign—can protect state officials who knowingly retaliate against constitutionally protected expression.

## II. STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court must accept all well-pleaded allegations as true and view them in the light most favorable to the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts" entitling her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). Under federal notice pleading, Plaintiff need only provide sufficient factual content to show her claims are plausible on their face, not proven beyond doubt. *Iqbal*, 556 U.S. at 678.

## III. ARGUMENT

### A. Plaintiff Has Standing and Has Suffered Actual Injury.

Plaintiff has clearly alleged a concrete and particularized injury traceable to Defendants' conduct: (1) a public disciplinary sanction and removal order; (2) the compelled suppression of protected expression; and (3) emotional distress and anxiety resulting from those actions.  Federal courts recognize that the chilling of speech and emotional distress caused by government retaliation are actionable injuries. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (loss of

First Amendment freedoms constitute irreparable injury); *Carey v. Piphus*, 435 U.S. 247, 263–64 (1978).

Defendants' assertion that the injury is speculative ignores the fact that the disciplinary determination and reprimand have already been issued, creating immediate consequences for Plaintiff's professional standing and mental health.

### B. Plaintiff's Claims Are Ripe for Judicial Review.

Defendants contend that Plaintiff's claims are not ripe because the disciplinary process is ongoing. That contention is incorrect. The Alabama State Bar has already rendered a final disciplinary determination against Plaintiff, issued an enforceable order compelling the removal of her protected speech and assessed a public reprimand with general publication and monetary fines. These actions have immediate and coercive consequences, both reputational and professional. The injury is not hypothetical; it is present and continuing.

Moreover, the Plaintiff has appealed the Bar's disciplinary decision through the procedures available under the Alabama Rules of Disciplinary Procedure. The very fact that Plaintiff was required to file an appeal to challenge the Bar's actions underscores the finality and concrete effect of the decision for purposes of ripeness. The appeal process itself confirms that the Bar's determination constitutes a completed administrative action with binding consequences, rather than a preliminary or advisory measure. Federal courts have consistently recognized that where an administrative decision has been rendered and the affected party is required to seek review or compliance, the matter is sufficiently final for judicial consideration. See *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967).

The hardship to Plaintiff of withholding judicial review is substantial. Absent intervention by this Court, Plaintiff remains under threat of public sanction, compelled speech

removal, and accumulating reputational injury. The ongoing enforcement of the reprimand continues to chill Plaintiff's current and future expression on matters of public concern. In contrast, the hardship to Defendants from immediate review is minimal—no legitimate state interest is impaired by ensuring that constitutional rights are respected.

The constitutional issues presented are purely legal and fit for immediate adjudication. Plaintiff's challenge concerns the facial and as-applied constitutionality of the Bar's disciplinary enforcement as retaliatory and content based. Delay would needlessly prolong the harm already inflicted. Because the disciplinary decision is final, has been appealed, and continues to impose real-world effects, Plaintiff's claims are ripe for review, and this Court's intervention is both proper and necessary to prevent ongoing constitutional injury.

### C. Plaintiff States a Plausible First Amendment Claim.

Plaintiff's online petition addressed the conduct of a sitting judge—a quintessential matter of public concern. See *Republican Party of Minn. v. White*, 536 U.S. 765, 774 (2002). Speech concerning public officials, especially judicial conduct, lies "at the heart of the First Amendment." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269–70 (1964).

Whether Plaintiff's statements were factual, opinion, or hyperbolic is a question for the jury, not a basis for dismissal. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). The First Amendment forbids the government from punishing speech simply because it is disfavored, critical, or uncomfortable. *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949).

By disciplining Plaintiff for criticizing a judge, Defendants have engaged in impermissible viewpoint discrimination. The Bar may regulate conduct, but it may not impose discipline as a means of suppressing dissent or deterring public criticism of judicial actors. See *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1437–39 (9th Cir. 1995) (holding

attorney's statements criticizing judge's integrity were protected opinion absent proof of knowing falsity).

### D. Defendants Are Not Entitled to Immunity.

Defendants contend that the claims should be dismissed because they are protected by quasi-judicial immunity, state-agent immunity, Eleventh Amendment immunity, and qualified immunity. Each doctrine fails when examined in its proper constitutional and factual context. Immunity is designed to shield officials performing legitimate governmental functions—not to provide cover when state power is used to retaliate against constitutionally protected speech, impose public stigma and compel the removal of political expression. Because Defendants' conduct was administrative, punitive, and undertaken for an unlawful retaliatory purpose, none of the asserted immunity doctrines apply.

### 1. Quasi-Judicial and State-Agent Immunity Do Not Apply.

Quasi-judicial immunity applies only to adjudicative functions performed neutrally and within lawful authority. *Butz v. Economou*, 438 U.S. 478, 512–13 (1978). The Butz case indicated that officials would not be immune if they "knowingly and deliberately" infringed on a constitutionally established rule. The allegations here do not involve neutral adjudication. They involve Defendant Caudell (and others) using the disciplinary process to penalize Plaintiff for publicly criticizing a sitting judge. Directing an attorney to remove protected online speech, initiating charges triggered by that speech and endorsing a public reprimand for that expression are non-judicial, discretionary enforcement actions. They are executive in character and punitive in effect—not adjudicative in nature.

Under Alabama's state-agent immunity doctrine, immunity is forfeited where an official acts "willfully, maliciously, fraudulently, in bad faith, [or] beyond his or her authority." *Ex parte*

*Cranman*, 792 So. 2d 392, 405 (Ala. 2000). That standard is met here. The Complaint alleges that Defendants acted with retaliatory motive and beyond the scope of lawful authority by suppressing core political speech. Retaliation for protected speech is per se beyond the lawful scope of a state official's duties. Accordingly, quasi-judicial immunity and state-agent immunity is unavailable.

### 2. Eleventh Amendment Immunity Does Not Bar This Action.

The Eleventh Amendment does not bar Plaintiff's claims because she seeks prospective declaratory and injunctive relief to end ongoing constitutional violations. Under *Ex parte Young*, 209 U.S. 123 (1908), state officials may be sued in their official capacities where, as here, the plaintiff seeks to prevent enforcement of unconstitutional state action. Moreover, Eleventh Amendment immunity does not extend to state officials sued in their individual capacities for damages. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Plaintiff has asserted claims for monetary damages against Defendant Caudell in her individual capacity, and those claims are not barred.

Therefore, even apart from the availability of damages, the request for declaratory relief alone requires that the case proceed. Because the Complaint seeks both (1) prospective equitable relief and (2) damages against an individual state actor, Eleventh Amendment immunity cannot support dismissal.

### 3. Qualified Immunity Is Not Available Because the Law Was Clearly Established and Defendant's Conduct Was Objectively Unreasonable.

Qualified immunity protects officials only where the law was unclear or their conduct was objectively reasonable. Neither condition is present here. For decades, it has been clearly established that:

> • The First Amendment prohibits retaliation for protected speech. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Perry v. Sindermann*, 408 U.S. 593 (1972).

• Criticism of public officials—including judges—is core political speech entitled to the highest level of constitutional protection. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

• Lawyers do not surrender their First Amendment rights upon licensure, and bar authorities cannot discipline attorneys simply because they disapprove of the content of speech.
*Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1054 (1991).

• Attorney criticism of judicial conduct is protected unless shown to be a knowingly false statement of fact. *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1437–39 (9th Cir. 1995).

Thus, the constitutional rule applied here was neither obscure nor unsettled.

Defendant Caudell ordered the removal of political speech, endorsed a public reprimand, and imposed monetary penalties for that speech. No reasonable official could have believed such viewpoint-based censorship was lawful. The Eleventh Circuit consistently denies qualified immunity where officials retaliate against protected expression. *Bailey v. Wheeler*, 843 F.3d 473, 483–84 (11th Cir. 2016); *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009).

Where the Complaint plausibly alleges retaliation—which it does here via timing, statements, and enforcement actions—qualified immunity is unavailable. *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Reichle v. Howards*, 566 U.S. 658, 664 (2012). *Pearson v. Callahan*, 555 U.S. 223, 242–43 (2009) confirms that qualified immunity has no application to forward-looking declaratory or injunctive relief. Thus, Defendants' Motion to Dismiss must be denied for this reason alone.

Accordingly, none of the asserted immunity doctrines shield the Defendants from liability. Their conduct was retaliatory, unconstitutional, and outside the scope of lawful authority, and the claims for declaratory relief independently require that this action proceed.

### E. Qualified Immunity Is Unavailable and Unwarranted.

Defendant Caudell's reliance on qualified immunity fails both legally and factually. Qualified immunity protects only those government officials who act reasonably and within the bounds of clearly established law. It does not shield officials who engage in deliberate retaliation or censorship in violation of constitutional rights that every reasonable officer would know. Qualified immunity exists to protect mistaken but reasonable judgments, not calculated constitutional violations. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine "does not protect the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Here, Defendant Caudell's actions were not merely negligent—they were deliberate, retaliatory, and undertaken with full awareness that the First Amendment prohibits governmental suppression of political speech.

### (1) The Constitutional Right at Issue Is Clearly Established.

It has been settled law for more than half a century that the government may not retaliate against individuals for engaging in protected expression. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Perry v. Sindermann*, 408 U.S. 593 (1972). This principle extends to licensing authorities and disciplinary boards, which act under color of state law. *Bates v. State Bar of Ariz.*, 433 U.S. 350, 360 (1977) (holding that attorney discipline implicates core First Amendment protections).

By 2025, no reasonable official could believe that instructing an attorney to remove an online petition criticizing a judge, or imposing professional discipline for that speech, was permissible. The right of lawyers to speak publicly on matters of judicial integrity has been clearly established for decades. *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1054 (1991) ("Lawyers do not surrender their First Amendment rights at the courthouse door."); *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1437–39 (9th Cir. 1995) (holding that attorney

criticism of a judge's integrity is protected speech absent proof of knowing falsity).

Furthermore, the Eleventh Circuit has long recognized that retaliation for protected speech is a clearly established constitutional violation. *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009); *Ratliff v. DeKalb Cnty.*, 62 F.3d 338, 340 (11th Cir. 1995); *Tindal v. Montgomery Cnty. Comm'n*, 32 F.3d 1535, 1539–40 (11th Cir. 1994). These cases uniformly hold that no reasonable official could believe that punishing or deterring protected expression is lawful governmental conduct.

### (2) Defendant's Conduct Was Objectively Unreasonable.

Qualified immunity applies only if a reasonable official could believe their conduct was lawful in light of clearly established precedent. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Defendant Caudell's conduct was neither reasonable nor objectively defensible. She issued a written directive compelling the removal of political speech, endorsed the issuance of a public reprimand and assessed monetary fines—all in direct response to speech that criticized a public official.

No reasonable attorney or bar official could have misunderstood that such actions amount to viewpoint-based retaliation. The Supreme Court has repeatedly made clear that the government may not penalize individuals for expressing disfavored opinions. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Defendant Caudell's enforcement of a speech-suppressive sanction was objectively unreasonable under settled First Amendment jurisprudence.

The Eleventh Circuit has denied qualified immunity in nearly identical contexts where officials retaliated against citizens for expressive conduct. *Bailey v. Wheeler*, 843 F.3d 473, 483–84 (11th Cir. 2016) (officer's retaliatory acts against citizen's complaint speech violated clearly

established law). The actions here are more egregious: the retaliation was carried out by an attorney charged with upholding constitutional ethics.

### (3) Retaliatory Intent Defeats Qualified Immunity.

The record shows a clear pattern of retaliatory intent: (1) initiation of disciplinary charges shortly after Plaintiff's speech; (2) express reference to her social-media petition in the disciplinary correspondence: and (3) a demand that she deletes protected content. These facts establish that the disciplinary action was motivated by an impermissible retaliatory purpose, stripping any claim of immunity.

### (4) Qualified Immunity Does Not Bar Prospective Relief.

Even if qualified immunity could conceivably apply to damages, it does not bar declaratory or injunctive relief. *Pearson v. Callahan*, 555 U.S. 223, 242–43 (2009). Plaintiff primarily seeks declaratory and injunctive relief to halt ongoing constitutional violations and prevent the enforcement of unconstitutional disciplinary orders. Therefore, qualified immunity provides no defense to the principal remedies sought in this case.

### (5) Extending Qualified Immunity Here Would Erode the Rule of Law.

Finally, policy considerations strongly weigh against extending qualified immunity to bar officials who retaliate against protected speech. Qualified immunity is meant to safeguard legitimate governmental functions—not to empower officials to suppress dissent. Extending immunity here would send the dangerous message that a licensing authority may punish lawyers for criticizing judges without judicial scrutiny.

As the Supreme Court observed in *Hope*, qualified immunity must not become a "license to lawless conduct." *Hope*, 536 U.S. at 739. The doctrine should not be transformed into an instrument of institutional retaliation against those who speak truth to power. The actions of

Defendant Caudell are precisely the kind of deliberate, rights-violating conduct that the doctrine was never intended to protect.

Accordingly, qualified immunity is wholly unavailable. The constitutional violation is clear, the law is well established, the conduct is objectively unreasonable, and the remedy sought—prospective injunctive and declaratory relief—lies beyond the doctrine's reach. Defendant Caudell must therefore answer for her actions in this Court.

**F. Plaintiff Has Suffered Severe Emotional and Reputational Harm.**

Defendants' retaliatory conduct has caused Plaintiff ongoing anxiety, sleeplessness, and emotional distress, as well as fear of professional and financial ruin. These harms are not speculative—they are the predictable result of public censure and compelled self-censorship. The Supreme Court has recognized emotional distress and reputational harm as concrete injuries under § 1983. *Carey v. Piphus*, 435 U.S. 247, 263–64 (1978); *Meese v. Keene*, 481 U.S. 465, 473 (1987). Defendants' actions have imposed precisely those injuries here.

## IV. CONCLUSION

Defendants' Motion to Dismiss invites this Court to overlook the deliberate and retaliatory misuse of disciplinary power by state officials acting under color of law. The Plaintiff's allegations—taken as true at this stage—demonstrate clear, ongoing violations of her First and Fourteenth Amendment rights, concrete injury, and actionable emotional and reputational harm.

The facts show that Defendant Caudell, acting in concert with the Alabama State Bar, sought to punish and silence Plaintiff for engaging in protected speech about judicial accountability—a topic that lies at the heart of the First Amendment's protections. The August 25, 2025, letter imposed a public reprimand, financial penalties, and a compelled removal

order aimed squarely at Plaintiff's online petition. Such actions go beyond legitimate bar regulation and cross into unconstitutional retaliation and viewpoint discrimination.

The standing requirement is easily satisfied because Plaintiff has suffered a concrete, personal injury: the issuance of a public disciplinary sanction, the imposition of fines, and the chilling of future speech. The injury is directly traceable to Defendants' conduct and redressable through this Court's declaratory and injunctive authority. The ripeness doctrine also offers no protection to Defendants. The disciplinary determination is final and enforceable, creating immediate coercive effects. Plaintiff need not wait for further harm when the damage— reputational, emotional, and professional—is already occurring.

Plaintiff has also stated a plausible and well-supported First Amendment claim. Her online petition addressed matters of public concern and was posted after judicial proceedings had concluded. The Bar's disciplinary enforcement is a form of state censorship that violates established constitutional precedent, including *Gentile v. State Bar of Nevada*, *Yagman*, and *New York Times Co. v. Sullivan*. No authority grants a state agency the right to punish a lawyer merely for criticizing the judiciary.

The Defendants' invocation of qualified immunity fails as a matter of law. The right to be free from government retaliation for protected speech is clearly established. Reasonable officials in Defendant Caudell's position would have known that compelling the removal of lawful speech and issuing a public reprimand for online criticism of a judge violated the First Amendment. The Supreme Court and the Eleventh Circuit have repeatedly held that retaliatory conduct and viewpoint discrimination by government officials is patently unconstitutional. Moreover, qualified immunity does not bar the prospective injunctive and declaratory relief Plaintiff seeks.

Beyond the constitutional violations, Plaintiff has suffered genuine emotional distress and

reputational harm**.** The Supreme Court in *Carey v. Piphus*, 435 U.S. 247, 263–64 (1978), recognized that emotional injuries, though not presumed, are compensable when proven. Here, Plaintiff can and will present evidence showing that the threat and imposition of public discipline, coupled with monetary fines, caused measurable anxiety, sleeplessness, and humiliation. As in *Meese v. Keene*, 481 U.S. 465, 473 (1987), reputational injury stemming from state-imposed stigma is itself a concrete constitutional harm.

To dismiss this case would be to sanction a dangerous precedent: that a state agency may wield disciplinary power to suppress criticism and silence dissent. The Constitution does not permit such misuse of authority. The First Amendment's protections are not limited to popular or comfortable speech—they extend most urgently to the speech that challenges those in power. The retaliatory discipline at issue here strikes at the very foundation of free expression, professional independence, and public confidence in an impartial bar.

For all the foregoing reasons—standing, ripeness, clearly established constitutional violations, emotional and reputational injury, and the inapplicability of immunity doctrines—the Defendants' Motion to Dismiss is due to be **DENIED** in its entirety. Plaintiff respectfully requests that this Court allow discovery to proceed so that the full scope of Defendants' unconstitutional conduct may be brought to light and remedied through appropriate relief.

Respectfully submitted on the 4th day of November 2025.

/s/ Jeanetta Pleasant____
Jeanetta Pleasant
Pleasant Legal Solutions, PC
100 Concourse Parkway, Suite 128
Hoover, AL 35244
(659) 212-8500
jeanetta@pleasantlegalsolutions.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2025, a copy of the above and foregoing was served to all parties of interest through the Court's electronic filing system.

/s/ Jeanetta Pleasant
Jeanetta Pleasant
Pleasant Legal Solutions
100 Concourse Pkwy STE 128
Hoover, AL 35244
(659)212-8500
jeanetta@pleasantlegalsolutions.com

## SERVICE LIST

| Laura Susan Burns | Autumn Caudell | Alabama State Bar |
|---|---|---|
| 4128 Crosshaven Drive | 415 Dexter Avenue | 415 Dexter Avenue |
| Vestavia, Alabama 35243 | Montgomery, Al 36104 | Montgomery, AL 36104 |

EXHIBIT A

**Office of General Counsel**



415 DEXTER AVENUE
POST OFFICE BOX 671
MONTGOMERY, AL 36101
P: 334-269-1515
alabar.org

August 25, 2025

Jeanetta Wells Pleasant
500 Southland Drive
Suite 155J
Hoover, AL 35226
*via* email only to: info@pleasantlegalsolutions.com

> RE: **Jeannetta Wells Pleasant**
> **ASB No. 2025-328**
> **Laura Susan Burns**

Dear Ms. Pleasant:

On June 11, 2025, the Disciplinary Commission considered the above-referenced matter and determined you should receive a ***Public Reprimand With General Publication*** and pay and any and all costs taxed against you pursuant to Rule 33, *Alabama Rules of Disciplinary Procedure*, including a $1,000.00, administrative fee, for violating Rules 3.1(a) [Meritorious Claims and Contentions], 3.5(c) [Impartiality and Decorum of the Tribunal], 4.1 [Truthfulness in Statements to Others], 8.2(a) [Judicial and Legal Officials], 8.4(c) [Misconduct], 8.4(d) [Misconduct], and 8.4(g) [Misconduct], *Alabama Rules of Professional Conduct*. You are also required to remove any social media posts or online campaigns regarding this matter. Upon removal, please provide notice to the Office of General Counsel.

You filed a *Request for Reconsideration* on June 25, 2025. On August 13, 2025, the Disciplinary Commission considered the above-referenced reconsideration request and determined your request was due to be and is hereby **DENIED**.

In accordance with Rule 12(d), *Alabama Rules of Disciplinary Procedure*, you are hereby notified you have **14 days from the date of this letter** to either: (a) accept, in writing, the proposed discipline, or (b) demand, in writing, that formal charges be filed against you.

If you wish to accept the decision of the Disciplinary Commission, please promptly notify me of such. If you fail to demand formal charges within **fourteen (14) days of the date of this letter**, the decision of the Disciplinary Commission will be entered as

RULE 30. *ALABAMA RULES OF DISCIPLINARY PROCEDURE* OF THE ALABAMA STATE BAR, ADOPTED BY THE SUPREME COURT OF ALABAMA, PROVIDE THAT ALL DISCIPLINARY PROCEEDINGS SHALL REMAIN CONFIDENTIAL UNTIL A PLEA OF GUILTY OR THE DISCIPLINARY BOARD OR DISCIPLINARY COMMISSION MAKES A FINDING OF GUILT.

Jeanetta Wells Pleasant
Page 2
August 25, 2025

the final discipline to be administered in this matter. Your decision is due to my office by September 8, 2025.

If you have any questions about this letter, please do not hesitate to contact me.

Sincerely,

Autumn A. Caudell
Assistant General Counsel

AAC.ab